FILED

2023 Jan-05  PM 02:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

**MICHAEL OWEN CAMPBELL,**
     Plaintiff,

**v.**

                              **Case No. 2:19-cv-1739-CLM**

**CITY OF TRUSSVILLE,**
     Defendant.

## MEMORANDUM OPINION

Plaintiff Michael Owen Campbell is a police officer who works for Defendant City of Trussville. Campbell sues Trussville for age discrimination and retaliation under the Age Discrimination in Employment Act of 1967 ("ADEA"). Trussville moves for summary judgment on all claims—although, importantly, not on all theories. *See infra* at 13-14. For the reasons explained within, the court will **GRANT in PART** and **DENY in PART** Trussville's motion (doc. 66). The court lists the claims to be tried in its conclusion.

### STATEMENT OF THE FACTS

Trussville hired Campbell as a patrol officer in 2008. Campbell was 43 at the time, and he had served 21 years as a patrol officer with the Birmingham Police Department. This case revolves around Trussville's decision not to promote Campbell to the ranks of sergeant or corporal. So to better explain Campbell's claims, the court must first explain how Trussville promotes its police officers.

### A.    Promotion System

The Personnel Board of Jefferson County governs the Trussville Police Department. For each police department promotion, the Personnel Board provides Trussville with a list of eligible candidates and requires the police department to promote someone on that list.

To pick who to promote from that list, Trussville uses a two-tier, two-round interview system. In the first round, a panel of supervisors interviews all eligible candidates who applied. The panel then selects three applicants for final consideration. In the final round, the police chief interviews those three candidates and selects one of them to fill the open position.

### B.   Promotions Under Police Chief Bridges

Jeff Bridges was Trussville's police chief from 2016 to June 2018. In January 2018, Chief Bridges selected 44-year-old Michael Bruce for promotion to sergeant. Campbell was a candidate for this promotion, but the interview panel didn't select Campbell as one of the three candidates for Chief Bridges to interview.[1] A few weeks later, Trussville promoted 38-year-old Joe Rosetta to sergeant. Campbell was a candidate for this promotion but once again wasn't selected for the second round of interviews.

Around four months later, Trussville promoted Chad Jones, who was 45, to another open sergeant position. Though Lts. Cardwell and Dillon interviewed Campbell for this position, they didn't select him for the police chief interviews. According to Chief Bridges, even if an interview panel had recommended Campbell to him, he wouldn't have selected Campbell for these positions because he didn't think Campbell was sergeant material.

### C.   Promotions Under Police Chief Rush

Soon after Trussville promoted Jones over him, Campbell filed a charge of discrimination with the EEOC, alleging age discrimination. Around that same time, Eric Rush succeeded Bridges as police chief. About a year later, Rush promoted 36-year-old Joseph Dunn to Patrol Division Sergeant. Lt. Cardwell, Sgt. Riner, and Sgt. Lovell interviewed Campbell for this position and selected Campbell for the second-round interview with Chief Rush. According to Chief Rush, he promoted Dunn because of his compatibility for

---

[1] For nearly every promotion at issue, Campbell disputes statements from Chief Bridges and Chief Eric Rush that Campbell wasn't a candidate selected for the second round of interviews, stating that Trussville never provided the documentation he requested to support these statements. But "[m]ere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment." *Bald Mountain Park, Ltd v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989). And Campbell points to no *evidence* that contradicts Chief Bridges and Chief Rush's sworn testimony. So the court considers the fact that Campbell wasn't a candidate selected for these police chief interviews to be undisputed. *See* Fed. R. Civ. P. 56(c), (e).

the position and didn't select Campbell because of "his negative attitude, perceived dislike for his higher ranking officers and questionable ability to be a positive influence on subordinates." (Doc. 67-5 at 3). Following the denial of this promotion, Campbell sued Trussville.

Two months later, Trussville promoted 44-year-old R. Hicks to Nightshift Patrol Sergeant. Lt. Cardwell, Sgt. Reid, and Sgt. Posey interviewed Campbell for this position but didn't select him for the second round of interviews. Three months later, Trussville filled two new sergeant positions with Ryan Robinson and Jean Bryant. Though Campbell interviewed for these positions, the interview panel didn't select him for the police chief interview. About four months later, Trussville promoted Josh Payne and John Bryant to two open sergeant positions. Campbell once again applied for the promotion but didn't make it to the police chief interview.

In November 2020, Trussville created four corporal positions, which included two day-shift positions and two night-shift positions. The officers promoted to these positions were Officer Fuell, Officer Tomlin, Officer Middleton, and Officer Shelnutt. Again, Campbell wasn't selected by the interview panel for an interview with Chief Rush.

## D.    Other Alleged Adverse Employment Actions

In Count 2, Campbell alleges that Trussville began retaliating against him once he filed his EEOC charge and lawsuit. The first alleged retaliatory act is the removal of Campbell's status as a Field Training Officer ("FTO"). FTOs train new hires in Trussville's policies and procedures. Starting in June 2015, Campbell worked as an FTO. During that time, a field training manual governed the training of new hires. At some point, Campbell amended the manual. The parties dispute whether Campbell had permission to make these changes but agree that Campbell received informal counseling about the material he added.

From September to October 2018, Campbell trained Johnathan Goodrum who would be his last assigned trainee. Trussville says that it reassigned Goodrum to another FTO after he complained about Campbell. But as Campbell points out, emails from Clint Riner, who headed the FTO program, suggest that Campbell's training of Goodrum ended because

Goodrum had completed phase 2 of his training. Trussville then decided to not assign Campbell any more trainees. Despite this decision, Campbell requested that Trussville let him attend FTO and supervisor liability classes. Chief Rush says he denied these requests because Campbell was no longer an FTO.

Trussville has three primary patrol shifts: the day shift (7:00 am to 7:00 pm), the night shift (7:00 pm to 7:00 am), and the evening shift (12:00 pm to 12:00 am). Chief Rush transferred Campbell from the night shift to the evening shift in either December 2019 or January 2020. According to Chief Rush, he transferred Campbell to make room to train a new hire.

In 2020, Chief Rush also appointed Chad Jones as Firing Range Master/Instructor. That same year, Chief Rush chose Anthony Martin to fill an open position with Trussville's Direct Enforcement Unit ("DEU"). Campbell claims that he was more qualified for the DEU position than Martin because he had 12 ½ years of experience as a Trussville patrol officer and worked for 12 years as a Birmingham narcotics detective while Martin had worked for Trussville for only about a year.

At times, Trussville will acquire new patrol vehicles and assign these vehicles to officers. When assigning these newer vehicles, Trussville considers seniority, officer proactivity, and how the officer cares for the car currently assigned to him. Campbell claims that Trussville retaliated against him by assigning newer vehicles to those with less seniority. Chief Rush responds by saying that Campbell had been instructed to keep his car cleaner and that Campbell's vehicle was still in good shape.

## STANDARD OF REVIEW

In reviewing a motion for summary judgment, this court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *See Cuesta v. Sch. Bd. of Miami-Dade Cty.*, 285 F.3d 962, 966 (11th Cir. 2002). Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

DISCUSSION

Campbell presents no direct evidence of either age discrimination or retaliation, so the court analyzes his claims under the frameworks applicable to cases involving circumstantial evidence of discrimination. One way that Campbell can create a jury question on his ADEA claims is to satisfy the three-part burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973). *See Chapman v. Al Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000). Under that framework, (1) Campbell bears the initial burden to prove a prima facie case of discrimination or retaliation; (2) the burden then shifts to Trussville to produce a legitimate, nondiscriminatory reason for its actions; and finally, (3) the burden returns to Campbell to provide evidence of pretext. Campbell's claims can also survive summary judgment if he "presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (quotations and footnote omitted).

## Count 1: Age Discrimination

Campbell's age discrimination claim is based on Trussville's failure to promote him to the open sergeant, corporal, and DEU positions.[2] According to Campbell, Trussville discriminated against him by repeatedly passing him over for promotions in favor of younger, less qualified officers.

### A.    *McDonnell Douglas*

1. Prima facie case: To establish a prima facie case of age discrimination, Campbell must show that he "(1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced by or otherwise lost a position to a younger individual." *Chapman*, 229 F.3d at 1024.

Everyone agrees that Campbell can meet the first element because he was over 40 during each of the promotions at issue and thus a member of the

---

[2] Campbell doesn't press any other theory of age discrimination in response to Trussville's motion for summary judgment. So the court finds that his age discrimination claim is limited to a failure to promote theory of discrimination and that Campbell has abandoned all other theories. *See Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

class that the ADEA protects. *See* 29 U.S.C. § 631(a) (prohibiting employers from discriminating against those age 40 or older based on age). And Campbell satisfies the second element because he faced adverse employment actions—*i.e.*, he didn't receive several promotions that he applied for. The parties dispute the third and fourth elements.

As for the third element, Trussville says that Campbell wasn't qualified because he didn't meet the subjective criteria for the promotions. But at the prima facie stage the court isn't concerned with whether Campbell met Trussville's subjective criteria for the positions of sergeant, corporal, or DEU officer. *See Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768–69 (11th Cir. 2005) ("While AISS argues that [the plaintiff] was unqualified because he lacked the leadership style they preferred and could not provide a seamless transition, such subjective criteria have no place in the plaintiff's initial prima facie case." (footnote omitted)). "Rather, to demonstrate that he was qualified for the position, a . . . plaintiff need only show that he or she satisfied an employer's objective qualifications. The employer may then introduce its subjective evaluations of the plaintiff at the later stages of the *McDonnell Douglas* framework." *Id.* at 769. Trussville doesn't argue that Campbell lacked the objective qualifications required for the open positions. And based on Campbell's experience, training, and eligibility to apply for these positions, a reasonable juror could find Campbell qualified.

Trussville asserts that Campbell fails to meet the fourth element for two reasons: (1) there's no evidence Trussville intended to discriminate against Campbell, and (2) Trussville promoted officers over 40 to several of the open positions. Trussville has cited no Eleventh Circuit case that has required an ADEA plaintiff to show as part of his prima facie case evidence of an intent to discriminate. And the district court case that Trussville cites recognizes that all a plaintiff must show to meet the fourth element is that the employer treated a younger individual better than the plaintiff. *See Valdez v. Staples Inc.*, 2009 WL 10666053, at *14 (N.D. Ga. Jan. 15, 2009). So Trussville's first argument fails.

Trussville's second argument fares no better. Though the ADEA protects only those over 40 from age discrimination, an ADEA comparator doesn't have to be under 40 for a plaintiff to make out a prima facie case of age

discrimination. *See Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1299 (11th Cir. 2015). Instead, the proper inquiry is whether the comparator was "substantially younger" than the plaintiff, which is met when the comparator is at least three years younger. *Id.* The record shows that Campbell is at least seven years older than any of the promoted officers. So Campbell has made out a prima facie case of discrimination under the ADEA.

2. Legitimate, nondiscriminatory reason: The burden thus shifts to Trussville to articulate a legitimate, nondiscriminatory reason for its failure to promote Campbell. *See Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008). Trussville says that it didn't promote Campbell because Chief Bridges determined that Campbell wasn't sergeant material; the panel of interviewers only once selected Campbell as a top three candidate; Chief Rush found Officer Dunn a more compatible candidate for the sergeant position; and, Chief Rush determined that Martin was a better fit for the DEU position.[3]

That the interview panel determined Campbell wasn't a top three candidate for eight of the nine sergeant openings and the four new corporal positions is a legitimate reason to not promote Campbell. So is Chief Bridges' alternative explanation that he didn't promote Campbell because he thought Campbell wasn't sergeant material. That's because Chief Bridges explained the reasons for this opinion. *See Chapman*, 229 F.3d at 1034 ("A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion."). For example, Chief Bridges stated that, in his view, Campbell often complained, did the bare minimum, and favored practices he learned as a Birmingham police officer over Trussville's practices and procedures. (*See* Doc. 67-14 at 4–5). Chief Rush's explanation for why he selected Martin for the DEU position also (barely) satisfies Trussville's Step 2 burden. Though not a model of particularity, Chief Rush does provide some

---

[3] In its reply brief, Trussville adds that it didn't promote Campbell because of his arrogance, entitlement, and continued disrespect for the chain of command. (Doc. 80 at 13). This court does not ordinarily consider arguments made for the first time in a reply brief. *See KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1328 n.4 (11th Cir. 2004). Besides, Trussville doesn't cite testimony from Bridges or Rush saying that these were the reasons they didn't promote Campbell. Instead, these explanations appear to be based on counsel's perception of how Campbell came across during his deposition. (*See* Doc. 80 at 13). And "statements and arguments of counsel are not evidence." *United States v. Valois*, 915 F.3d 717, 726 (11th Cir. 2019). For both these reasons, the court does not consider these explanations for not promoting Campbell.

specific reasons for not promoting Campbell to DEU. For example, Chief Rush says that he considered that Campbell didn't have much narcotics experience within the Trussville Police Department. This explanation satisfies Trussville's "exceedingly light" burden at Step 2. *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983).

But Chief Rush's explanation for why he promoted Dunn over Campbell isn't adequate. A "defendant's explanation of its legitimate reasons must be clear and reasonably specific so that the plaintiff be afforded a full and fair opportunity to demonstrate pretext." *Chapman*, 229 F.3d at 1034 (quotations omitted). And though "employment decisions may be based on subjective criteria," that criteria must be "capable of objective evaluation and . . . stated with a sufficient degree of particularity." *See EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1280 n.17 (11th Cir. 2000). So, for example, it's probably not enough for an employer to simply state that it didn't hire an applicant because it "did not like his appearance." *Chapman*, 229 F.3d at 1034. But an employer would satisfy its burden to produce a legitimate, nondiscriminatory reason if it explained, "I did not like his appearance because his hair was uncombed and he had dandruff all over his shoulders." *Id.*

With that level of specificity in mind, here is Chief Rush's entire explanation for why he promoted Dunn instead of Campbell:

> 16.   I selected Officer Dunn for the promotion based upon his compatibility for the position based upon the criteria utilized.
>
> 17.   Officer Campbell was not selected due to his negative attitude, perceived dislike for his higher ranking officers and questionable ability to be a positive influence on subordinates.

(Doc. 67-5 at 3). These bare-bones statements of subjective beliefs do not pass muster because Chief Rush doesn't explain ***why*** the 36-year-old Dunn was compatible for the position, ***why*** Chief Rush thought Campbell had a negative attitude, ***why*** Chief Rush perceived Campbell as disliking higher ranking officers, or ***why*** Chief Rush questioned Campbell's ability to be a positive influence. Again, Eleventh Circuit precedent requires specifics "so that the

plaintiff be afforded a full and fair opportunity to demonstrate pretext." *Chapman*, 229 F.3d at 1034. Chief Rush's lack of specificity makes it impossible for Campbell to combat his explanation or for the court to objectively evaluate the stated reasons for denying Campbell this promotion. So, though an employer's burden is "exceedingly light" at Step 2, *Perryman,* 698 F.2d at 1142, the court finds that the explanation for promoting Dunn over Campbell doesn't meet that burden. As a result, the court will deny Trussville's motion for summary judgment on the age discrimination claim based on Dunn's promotion without shifting the burden back to Campbell to show pretext.

3. <u>Pretext</u>: But the burden does shift back to Campbell to show pretext for the 8 other sergeant promotions, 4 corporal promotions, and DEU promotion. To meet this burden, Campbell must "produce sufficient evidence for a reasonable factfinder to conclude that each of [Trussville's] proffered nondiscriminatory reasons is pretextual." *Ring v. Boca Ciega Yacht Club Inc.*, 4 F. 4th 1149, 1163 (11th Cir. 2021) (emphasis and quotations omitted). And a "reason cannot be proved to be a pretext *for discrimination* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Id.* (quotations omitted).

*a. Interview panel selections:* As explained, except for the Dunn promotion, Trussville says that the reason Chief Bridges and Chief Rush didn't promote Campbell to sergeant or corporal was because the two-tier promotion system required them to promote an officer that the interview panel selected for the police chief round of interviews. And for these promotions the interview panel didn't select Campbell as one of the three candidates to move on to the second round.

Campbell doesn't dispute that the Jefferson County Personnel Board requires Trussville to promote only candidates recommended by the interview panel. Nor does he contend that the officers that made up these interview panels had animus against him because of his age. Instead, Campbell argues that a jury could disbelieve Chief Bridges and Chief Rush's testimony that he wasn't a top three candidate for these promotions because they didn't produce documentary evidence to support this testimony. But Campbell cites no evidence that contradicts Chief Bridges or Chief Rush's sworn testimony. Nor

did Campbell move to compel Trussville to produce records that supported these statements or move under Rule 56(d) for the court to delay consideration of the summary judgment motion until after Trussville produced these records. So though the court must draw all reasonable inferences in Campbell's favor, the only reasonable inference to draw from the summary judgment record is that Campbell wasn't a candidate selected for these police chief interviews. *See supra* n.1. As a result, Campbell has failed to meet his burden to rebut Trussville's first reason for not promoting Campbell to these open sergeant and corporal positions.

*b. Chiefs' subjective evaluations:* Campbell argues that Chief Bridges and Chief Rush's subjective evaluations of him show that they wouldn't have promoted him to any of the open positions even if the interview panel had recommended him for the second round of interviews. So, Campbell says, if he can rebut the subjective criteria that allegedly disqualified him from the sergeant and corporal promotions, his claims should go to a jury.

Campbell's argument ignores that "a plaintiff's failure to rebut even one nondiscriminatory reason is sufficient to warrant summary judgment." *Ring*, 4 F.4th at 1164. Plus, even if Campbell proved that everything in Chief Bridges and Chief Rush's affidavits was false, he still wouldn't have shown pretext. That's because under *McDonnell Douglas* it isn't enough for Campbell to make out a prima facie case and then cast doubt on Trussville's proffered reasons for its action. *See Flowers v. Troup Cnty. Ga., Sch. Dist.*, 803 F.3d 1327, 1337–39 (11th Cir. 2015). He must also point to evidence that suggests that age discrimination was the real reason for Trussville's failure to promote him. *See id.* And Campbell has produced no evidence other than that the promoted officers were younger than him that would suggest that age played a part in Trussville's decision not to promote Campbell for these sergeant, corporal, and DEU positions. So Campbell's age discrimination claims related to the promotions other than the Dunn promotion don't satisfy the *McDonnell Douglas* framework.

## B.   Convincing Mosaic

Campbell argues that even if he hasn't met his burden under the *McDonnell Douglas* framework, he's presented enough circumstantial evidence

to establish a convincing mosaic of discrimination. "A plaintiff may establish a convincing mosaic by pointing to evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements or other information from which discriminatory intent may be inferred, (2) systematically better treatment of similarly situated employees, and (3) pretext." *Jenkins v. Nall*, 26 F. 4th 1243, 1250 (11th Cir. 2022) (quotations omitted).

Because the discrimination claim based on the Dunn promotion gets to a jury under *McDonnell Douglas*, the court needn't determine whether that claim also satisfies the convincing mosaic framework. As for Campbell's other age discrimination claims, Campbell fails to explain what evidence paints a convincing mosaic of discrimination. And as discussed, Campbell has pointed to no evidence from which a discriminatory intent can be inferred. Nor has Campbell shown that younger officers were systematically treated better than older officers by, for example, providing evidence of officers other than himself losing promotions to younger colleagues. Campbell also hasn't cast doubt on Trussville's explanation that it didn't promote Campbell to the sergeant and corporal positions because he wasn't recommended by the interview panels. So these claims don't get to a jury under the convincing mosaic framework either.

—

In sum, Campbell's claim that Trussville discriminated against him by promoting Dunn to sergeant will go to trial. The court will grant Trussville's motion for summary judgment on Campbell's other age discrimination claims.

## Count 2: Retaliation

Campbell alleges that Trussville took several actions against him in retaliation for filing an EEOC charge and pursuing this lawsuit. These acts include removing Campbell as an FTO, denying Campbell's FTO and supervisory liability training requests, reassigning Campbell to the evening shift and not allowing him to return to his preferred shift, giving Campbell a less prestigious assignment at injustice rally, assigning Campbell an older

model patrol vehicle, and failing to promote Campbell to open sergeant, range master, DEU, and corporal positions.[4]

Under *McDonnell Douglas*, a plaintiff establishes a prima facie case of retaliation when he shows (1) that he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) that there's some causal relationship between the two events.[5] *See Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994). In the retaliation context, an adverse employment action is any act that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008). And at the prima facie stage, a plaintiff can establish causation by showing "that the protected activity and the adverse action were not wholly unrelated." *Tolar v. Bradley Arant Boult Cummings*, 937 F.3d 1280, 1294 (11th Cir. 2021) (quoting *Gogel v. Kia Motors Mfg. of Ga.*, Inc., 967 F.3d 1121, 1135 (11th Cir. 2020) (en banc)).[6]

1. <u>Removal as FTO</u>: Trussville says that Campbell's retaliation claim based on his removal as an FTO fails because he cannot prove causation or show that his removal was an adverse employment action. The court agrees with Trussville that Campbell cannot prove causation. Campbell filed his EEOC charge in May 2018. The record evidence shows that Campbell continued to work as an FTO until at least October 2018 when Goodrum returned to his primary FTO for more training. This five-month gap cannot establish the requisite close temporal proximity between the filing of Campbell's EEOC charge and his removal as an FTO. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (suggesting that a three-to-four-month passage of time is too long to establish close temporal proximity).

And no other evidence suggests a causal connection between Campbell's filing of the EEOC charge and his removal as FTO. That Trussville assigned

---

[4] In his response brief, Campbell mentions only these alleged adverse employment actions as supporting his ADEA retaliation claim. (Doc. 72 at 33–34). So the court finds that Campbell's retaliation claim is limited to these alleged retaliatory acts. *See Resol. Tr. Corp*, 43 F.3d at 599.

[5] Campbell does not argue that the "convincing mosaic" theory could be used to establish his retaliation claim. And the Eleventh Circuit has never held that the "convincing mosaic" theory can be used to prove retaliation. *See Baily v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1273 n.1 (11th Cir. 2021).

[6] In *Gogel*, the en banc court assumed that the not-wholly-unrelated standard applies at the prima facie stage and the but-for-causation standard applies at the pretext stage. *Gogel*, 967 F.3d at 1135 n.13. The court follows that assumption.

Campbell to work as Goodrum's secondary FTO four months after Campbell filed his EEOC charge tends to *disprove* causation. And though Campbell says that Trussville's reason for removing him as an FTO is false because Goodrum never complained, he hasn't presented any evidence that the real reason for his removal was his EEOC charge. So the court finds that Campbell's retaliation claim based on his removal as FTO fails.

2. <u>Denial of training requests</u>: Campbell next claims that Trussville retaliated against him by denying his requests for FTO and supervisory liability training. Trussville says that it denied these training requests because Campbell made them after his removal as FTO so he was no longer a supervisor. Campbell responds that because the removal of his status as an FTO was retaliatory he can show that the denial of these training requests was also retaliatory. As explained, Campbell cannot make out even a prima facie case of retaliation for the claim related to his removal as FTO. So the court finds that Campbell has failed to establish a causal connection between the denial of his training requests and his protected activity. And even if Campbell could show causation, he couldn't prove that Trussville's stated reason for denying these requests was pretext. So the court will dismiss this claim.

3. <u>Shift reassignment</u>: Campbell also claims that Trussville retaliated against him by reassigning him from the night shift to the evening shift. Trussville argues that Campbell cannot establish a prima facie case of retaliation for this claim because he cannot show that the reassignment was an adverse employment action or prove causation.

As discussed, an adverse employment action is any act that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Crawford*, 529 F.3d at 974. This standard "strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse' to him and thus constitute adverse employment actions." *Id.* at 973 n.13. And at least once, the Eleventh Circuit has found that transferring a law enforcement officer from the night shift to the day shift could be an adverse action because it could materially harm the officer. *See Smith v. City of Greensboro*, 647 F. App'x 976, 981–82 (11th Cir. 2016). So viewing the evidence

in the light most favorable to Campbell, the court determines that a reasonable jury could find that the reassignment was an adverse employment action.

Campbell has also shown causation. Though Trussville points out that it didn't reassign Campbell to the evening shift until a year and a half after he filed his EEOC charge, the reassignment happened around six weeks after Campbell sued Trussville, which is protected activity. *See* 29 U.S.C. § 623(d). So the court finds the close temporal proximity between the filing of this suit and Campbell's shift change shows causation. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("The burden of causation may be met by showing close temporal proximity between the statutorily protected activity and adverse employment action.").

As a result, the burden shifts to Trussville to provide a nonretaliatory reason for Campbell's shift change. But Trussville doesn't move for summary judgment on the last two *McDonnell Douglas* steps or clearly argue what its legitimate reason for reassigning Campbell is. Instead, Trussville says in a footnote that "[t]he decision to move the Plaintiff from night shift to another shift was to make room on the night shift for the training of a new hire." (Doc. 68 at 42 n.10). Appendix II to this court's initial order explains that it "will not consider substantive arguments made in footnotes." (Doc. 8 at 16). And as the movant, it is Trussville's responsibility to articulate its arguments in favor of summary judgment. So the court finds that Trussville has abandoned any argument that it is entitled to summary judgment on Campbell's reassignment based retaliation claim under the last two *McDonnell Douglas* steps. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682 (11th Cir. 2014) ("Abandonment of an issue can also occur when passing references appear in the argument section of an opening brief, particularly when the references are mere 'background' to the . . . main arguments or when they are 'buried' within those arguments."). Because Campbell has established a prima facie case of retaliation, his retaliation claim based on the shift reassignment will go to trial where Trussville may make the argument that it had a nonretaliatory reason for the reassignment.

4. Injustice rally assignment: Trussville's next alleged retaliatory act is Campbell's assignment to "a roving one officer patrol unit along with the School Resource Officers" during an Alabama Rally Against Injustice

14

demonstration. (Doc. 22 ¶ 188). According to Campbell, this assignment humiliated him because younger, less experienced officers were placed in more prestigious positions at the site of the rally. (*Id.*).

The parties' briefing on this claim is minimal. But the court ultimately agrees with Trussville that Campbell hasn't shown that this discretionary assignment was an adverse action. "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). So "petty slights, minor annoyances, and simple lack of good manners" don't count as adverse employment actions. *Id.* And Campbell has presented no evidence that he suffered harm from the injustice rally assignment or that his background assignment was anything more than a "petty slight." So the court will grant Trussville's motion for summary judgment on this claim.

5. <u>Patrol vehicle assignment</u>: The court also finds that Campbell's patrol vehicle assignment wasn't an adverse action. Though Campbell views having a newer patrol vehicle as a benefit of seniority, he hasn't presented any evidence that his vehicle assignment harmed him. Nor has he shown that his vehicle assignment was anything but a "minor annoyance." So the court will dismiss Campbell's vehicle assignment retaliation claim.

6. <u>Promotions</u>: Campbell finally asserts that Trussville's failure to promote him to the sergeant, corporal, and DEU positions that came open after he filed his EEOC charge and lawsuit was retaliatory. Campbell also says that Trussville retaliated against him when it filled the open range master position with someone else.

*a. Sergeant and corporal promotions:* Campbell discusses the later sergeant and corporal promotions in the retaliation section of his complaint (doc. 22 ¶¶ 149–201) and asserts in his brief opposing summary judgment that the failure to promote him to these positions was retaliatory (doc. 72 at 33–34, 40–41). But Trussville doesn't discuss these promotions in the retaliation section of either its opening or reply brief. (Doc. 68 at 39–45; Doc. 80 at 15–17).

Once again, the court cannot make Trussville's arguments for it. Indeed, Rule 56 requires the party moving for summary judgment to identify "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Trussville may assert that its pretext arguments related to Campbell's discrimination claims apply equally to his retaliation claims. But not promoting someone because of his age is different than not promoting him because of a retaliatory animus. And the Eleventh Circuit has cautioned against granting summary judgment because an argument made in favor of summary judgment on one claim could also apply to another claim. *See Francis v. MSC Cruises, S.A.*, 835 F. App'x 512, 518 (11th Cir. 2020). So Campbell's claims that Trussville retaliated against him by not promoting him to the sergeant and corporal positions that became available after he filed his EEOC charge and lawsuit will go to trial.

*b. DEU and Range Master promotions:* Trussville does address Campbell's claims that Trussville's failure to reassign him to DEU or range master positions was retaliatory. As discussed, Trussville has provided legitimate, nonretaliatory reasons for not promoting Campbell to DEU. Trussville also offers a nonretaliatory reason for not naming Campbell range master—Chief Rush wanted to appoint someone with supervisory responsibilities for this position because it was also a supervisory position. So the burden shifts to Campbell to show pretext.

Campbell fails to meet this burden. He has presented no evidence that contradicts Chief Rush's statement that he appointed Sergeant Jones to the Range Master position because he wanted to fill the position with someone already in a supervisory role. Nor has Campbell pointed to any evidence that suggests that retaliation was the real reason he wasn't selected for these positions. So Campbell hasn't established that his protected activity was the but for cause of Trussville's failure to promote him to these positions. As a result, the court will grant Trussville's motion for summary judgment on the retaliation claims based on Trussville's failure to select Campbell to the DEU and Range Master positions.

—

In sum, Campbell's retaliation claims based on his shift reassignment and the corporal and sergeant promotions that followed his EEOC charge are the only retaliation claims that will go to trial.

## CONCLUSION

The court will **GRANT in PART** and **DENY in PART** Trussville's motion for summary judgment (doc. 66). These claims will go to trial:

- Campbell's age discrimination claim based on Dunn's promotion to sergeant.

- Campbell's retaliation claim based on his reassignment from night shift to evening shift.

- Campbell's retaliation claim based on Dunn's promotion to sergeant.

- Campbell's retaliation claim based on Hicks' promotion to sergeant.

- Campbell's retaliation claim based on Robinson and Jean Bryant's promotions to sergeant.

- Campbell's retaliation claim based on Payne and John Bryant's promotions to sergeant.

- Campbell's retaliation claim based on Fuell, Tomlin, Middleton, and Shelnutt's promotions to corporal.

The court will enter a separate order that carries out this ruling and **DISMISSES WITH PREJUDICE** all other claims.

**Done** on January 5, 2023.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE